# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> AZIZ HASSAN BEY, LETEZ OSIRIS BEY, MINISTER ZAKAR ALI, and DIVINE-SEVEN EL, <br><br> Defendants. | Case No. 22-CR-169-JPS <br><br><br> **ORDER** |

## 1. BACKGROUND

In August 2022, the grand jury returned an eighteen-count Indictment charging Defendants Aziz Hassan Bey ("Aziz Bey"), Letez Osiris Bey ("Letez Bey"), Minister Zakar Ali ("Ali"), and Divine-Seven El ("El") (together, "Defendants") with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count One), ECF No. 1 at 5–7, and wire fraud in violation of 18 U.S.C. §§ 1343, 2(a), and 2(b) (Counts Two Through Eight), *id.* at 8–9. Aziz Bey, Ali, and Letez Bey were charged with mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341, 2(a), and 2(b) and 18 U.S.C. §§ 1343, 2(a), and 2(b) (Counts Nine through Eleven). *Id.* at 10–11. Aziz Bey, Ali, and El were charged with mail fraud in violation of 18 U.S.C. §§ 1341 and 2(a) (Counts Twelve through Fourteen). *Id.* at 12–13. Finally, Aziz Bey and El were charged with unlawful monetary transactions in violation of 18 U.S.C. §§ 1957 and 2(a) (Counts Fifteen through Eighteen). *Id.* at 14. In October 2023, following a weeklong jury trial, the jury found each Defendant guilty on all counts for which he was charged. ECF Nos. 162, 163, 164, 165.

During the trial, Defendants Aziz Bey, Letez Bey, and Ali each filed a motion for a mistrial, alleging that the Government's remarks during opening statements constituted a prejudicial variance from the Indictment. ECF Nos. 154, 155, 156. The Court stated that it would take the motions under advisement, but that because all parties requested a jury trial, the case would go to the jury. ECF No. 159 at 26. The Court set deadlines for the Government to file a response to the motions and for Defendants to file reply briefs to the Government's response. *Id.* at 28. The Government filed its response, ECF No. 166, but Defendants did not file reply briefs. Instead, Defendants Aziz Bey, Letez Bey, and Ali each filed an "Affidavit of Criminal Complaint" against the Court related to the jury instructions; namely, asserting that the Court's instructions to the jury constituted a constructive amendment to the Indictment. ECF Nos. 171, 172, 173. The Government responded to the affidavits, ECF No. 179, and Defendants Aziz Bey and Ali filed reply briefs, ECF Nos. 181 and 182.

In the interim, El filed, all related to alleged violations of his Sixth Amendment right to counsel: (1) a motion for retrial, ECF No. 167; (2) an updated motion for a new trial, ECF No. 174; (3) a motion to amend his motion for a new trial, ECF No. 183; and (4) a motion for bill of particulars, ECF No. 184. The Government responded to the first two motions, ECF No. 179, but did not respond to the latter two, which raise variations on the arguments set forth in the first two motions.

For the reasons set forth below, each of the motions described in this Section will be denied. The Court will also briefly address the arguments raised in the affidavits of criminal complaint, given that both the Court and Magistrate Judge Nancy Joseph have previously adjudicated—in four

Page 2 of 17

Case 2:22-cr-00169-JPS    Filed 12/19/23    Page 2 of 17    Document 197

separate orders—the same issue in pretrial motions to dismiss the Indictment. ECF Nos. 82, 91, 92, 97.

## 2. LEGAL STANDARD

### 2.1 Aziz Bey, Letez Bey, and Ali's Motions for Mistrial

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Under this rule, "[a] defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) (citing *United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996)). In other words, "[t]he ultimate inquiry 'is whether the defendant was deprived of a fair trial.'" *United States v. Danford*, 435 F.3d 682, 686 (7th Cir. 2005) (quoting *United States v. Clarke*, 227 F.3d 874, 881 (7th Cir. 2000)).

### 2.2 El's Motions

Under the Sixth Amendment, a criminal defendant has a right to represent himself in a criminal proceeding. *Faretta v. California*, 422 U.S. 806, 819-20 (1975); *United States v. Oreye*, 263 F.3d 669, 671 (7th Cir. 2001). A defendant must "'voluntarily and intelligently' elect to conduct his own defense," and therefore "must first be 'made aware of the dangers and disadvantages of self-representation.'" *Martinez v. Ct. App.*, 528 U.S. 152, 161–62 (2000) (quoting *Faretta*, 422 U.S. at 835). The operative inquiry in the Seventh Circuit is "whether the record as a whole 'demonstrates that the defendant knowingly and intelligently waived his right to counsel.'" *United States v. Balsiger*, 910 F.3d 942, 953 (7th Cir. 2018) (quoting *United States v. Moya-Gomez*, 860 F.2d 706, 733 (7th Cir. 1988)).

3. **ANALYSIS**

    3.1 **Aziz Bey, Letez Bey, and Ali's Motions for Mistrial**

Defendants Aziz Bey, Letez Bey, and Ali challenge the following comments made by the Government during opening statements:

> So the evidence is going to show in this case that Divine-Seven El and Aziz Bey and Letez Bey and Zakar Ali were formally Mark, Devonne, Chauncey and Anthony were just playing make believe and engaging in magical thinking which would be fine if they had not weaponized it and turned it outward and used that thinking to defraud a lot of people out of a lot of money. That is a crime. Quite a lot of crimes actually. You saw earlier today they attempted to steal over $9 million dollars of tax payer money. If you add in the unemployment fraud and the car title fraud, it goes over an attempted $11 million of fraud.

ECF Nos. 154 at 1–2, 155 at 1–2, 156 at 1–2 (quoting ECF No. 150 at 17). Defendants take issue with the fact that the statements that they "attempted to steal over $9 million" and "attempted $11 million of fraud" are not charged in the Indictment. ECF Nos. 154 at 2, 155 at 2, 156 at 2. Instead, the Indictment sets forth several charts delineating the amount of money received by each Defendant, which adds up to only $874,229. *Id.*; *see also* ECF No. 1 at 6–7.

Defendants assert that these statements constituted a variance from the Indictment. ECF Nos. 154 at 2–3, 155 at 2–3, 156 at 2–3 (quoting *United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir. 1984) ("A variance occurs when the terms of the indictment are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.") and *United States v. Ratliff-White*, 493 F.3d 812, 820 (7th Cir. 2007) ("[A] variance is fatal only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented

against him or is exposed to the risk of double jeopardy.")). Defendants further contend that the asserted variance is unlawful because it "would subject [them] to an increase [sic] offense level under the Guidelines for sentencing purposes" based on the amount of financial loss at issue. ECF Nos. 154 at 3, 155 at 3, 156 at 3 (citing U.S.S.G. 2B1.1(b)(1)(H) and (K)).

In response, the Government argues that Defendants "misunderstand the different concepts of actual loss and intended loss" and, moreover, that the Indictment *does* allege that "the defendants attempted to fraudulently obtain several million dollars in EIDL funds and hundreds of thousands of dollars in PPP funds." ECF No. 166 at 2 (quoting ECF No. 1 at 6). Thus, the language of the Indictment is consistent with the Government's comments during opening statements and the evidence adduced at trial, where the Government introduced evidence of loan applications filed by Defendants that were funded, as well as unsuccessful loan applications. *Id.* at 2–3 (citing Exhibits 1–46 (ECF No. 160 at 1–2)).

The Court agrees with the Government. "In general, a variance will not constitute reversible error unless it change[s] an essential or material element of the charge so as to cause prejudice to the defendant." *United States v. Sorensen*, No. 19-CR-00745-1, 2023 WL 4865004, at *8 (N.D. Ill. July 31, 2023) (quoting *United States v. Scheuneman*, 712 F.3d 372, 379 (7th Cir. 2013)). "A conspiracy variance claim is treated as an attack on the sufficiency of the evidence." *Id.* (citing *United States v. Hopper*, 934 F.3d 740, 758 (7th Cir. 2019)).

As an initial matter, the "specific amount of money the defendant allegedly received . . . is not necessary to proving the crimes charged." *United States v. Davis*, 673 F. Supp. 252, 259 (N.D. Ill. 1987) (citing *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983)). Thus, based on that reason

alone, even if there had been a variance, it "is not material such that the verdict must be overturned." *Sorensen*, 2023 WL 4865004, at *8 (citing *Cina*, 699 F.2d at 859 and *United States v. Simmons*, 142 F.3d 441, 1998 WL 231103, at *1 (7th Cir. 1998)).

Nonetheless, there was no variance here. In addition to including charts detailing the amounts of money Defendants are alleged to have received, the Indictment alleged that Defendants "attempted to fraudulently obtain several million dollars in EIDL funds and hundreds of thousands of dollars in PPP funds." ECF No. 1 at 6. "The Fifth Amendment is not offended when a difference between the indictment and the proof at trial is insignificant, or a broadly worded indictment provides sufficient room for the evidence presented at trial." *United States v. Natour*, 700 F.3d 962, 969 (7th Cir. 2012) (citing *United States v. Trennell*, 290 F.3d 881, 887–89 (7th Cir. 2002)). In this case, the allegation that Defendants attempted to obtain millions of dollars through their scheme was "explicit in the indictment, in the Government's opening and closing statements, [and] in the proof at trial," where the Government introduced both funded and unsuccessful loan applications. *United States v. Griffin*, 76 F.4th 724, 738 (7th Cir. 2023).

Because there was no variance, Defendants were not prejudiced. Specifically, Defendants were not prejudiced by the Government's opening statement or the introduction of unsuccessful loan applications because the language of the Indictment allowed Defendants to "anticipate . . . what evidence will be presented against [them]." *United States v. Hollnagel*, 955 F. Supp. 2d 830, 845 (N.D. Ill. 2013) (citing *United States v. Howard*, 619 F.3d 723, 727 (7th Cir. 2010)). Defendants' argument that they will be prejudiced because introduction of unsuccessful applications may subject them to "a

more severe punishment because the loss amounts are higher" is "unripe, as no sentencing guidelines have yet been determined." *Sorensen*, 2023 WL 4865004, at *9, *11. Defendants are free to argue the issue of intended loss versus actual loss in advance of and at their sentencing hearings. For these reasons, Defendants Aziz Bey, Letez Bey, and Ali's motions for mistrial, ECF Nos. 154, 155, 156, are denied.

### 3.2 Aziz Bey, Letez Bey, and Ali's Affidavits of Criminal Complaint

In their affidavits of criminal complaint, Defendants Aziz Bey, Letez Bey, and Ali allege that the Court violated their Fifth Amendment rights by constructively amending the Indictment through the Court's jury instructions. ECF Nos. 171 at 2, 172 at 2, 173 at 2. Specifically, Defendants take issue with the fact that the Court instructed the jury that the second element of the charge of conspiracy to commit wire fraud requires the Government to prove, beyond a reasonable doubt, that "[t]he defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy." ECF Nos. 171 at 2, 172 at 2, 173 at 2 (citing Jury Instructions (ECF No. 161 at 19)). Defendants aver that the Indictment does not include this element. *Id.*

In pretrial motions to dismiss, both the Court and Magistrate Judge Joseph denied Defendants' argument that the Indictment was deficient because it lacked the "agreement element . . . and . . . the element that [Defendants] knowingly joined," ECF No. 97 at 4 (quoting ECF No. 91 at 3–4), as well as their argument that the Indictment was deficient because it lacked the "intent to defraud element," ECF No. 92 at 6 (quoting ECF No. 82 at 5). The Indictment charges that Defendants "knowingly conspired with each other . . . to devise and participate in a scheme to defraud and

obtain money and property . . . by means of materially false and fraudulent pretenses and representations." ECF No. 97 at 4 (quoting ECF No. 91 at 3–4). As the Court previously held,

> The Indictment sufficiently states both [the "agreement" and "knowingly joined"] elements. *Compare* ECF No. 1 at 5 (charging that Moving Defendants "knowingly conspired with each other . . . ."), *with United States v. Ganos*, No. 18-CR-62-PP, 2019 WL 927369, at *4 (E.D. Wis. Feb. 26, 2019) ("The first paragraph tracks the language of the statute, alleging that the defendant and his co-defendants knowingly conspired (agreed)[1] with each other to devise and participate in a scheme . . . ."); *see also United States v. Willis*, 868 F.3d 549, 553, 555–56 (7th Cir. 2017) (charge that defendants "knowingly . . . conspired . . . with other persons" or where defendants are "charged with conspiring with each other" sufficient to state agreement element) (citing *United States v. Moreland*, 703 F.3d 976, 984 (7th Cir. 2012)).

*Id.* at 6–7; ECF No. 92 at 6–7 (same as to "intent to defraud" element); ECF No. 82 at 5–6 (same). While the affidavits of criminal complaint are not in the form of a motion for the Court to rule upon, the Court incorporates its prior holdings on this issue by reference. For the same reasons that the Court and Magistrate Judge Joseph found in four prior orders, these arguments are meritless.

### 3.3  El's Motions

El asserts a variety of arguments pertaining to his Sixth Amendment right to counsel. His primary arguments are that the court did not properly ensure that he waived his right to counsel and that his *Faretta* colloquy was

---

[1] The *Ganos* court added the word "agreed" in its order, ostensibly to show that "agreed" is a synonym for "knowingly conspired." The indictment in that case uses only the words "knowingly conspired." *United States v. Ganos*, No. 18-CR-62, ECF No. 1 at 1 (E.D. Wis. Apr. 3, 2018).

Page 8 of 17

Case 2:22-cr-00169-JPS    Filed 12/19/23    Page 8 of 17    Document 197

conducted under duress. ECF No. 167 at 1; ECF No. 174 at 2; ECF No. 183 at 1; ECF No. 184. The record does not support these assertions.

First, a bit of background. On September 26, 2022, El appeared for his arraignment and plea hearing by video conference before Magistrate Judge William E. Duffin. ECF No. 31. At that time, he was represented by retained attorney Rae Shearn ("Attorney Shearn"). *Id.* El stated that he did not consent to proceeding because any plea entered would be against his will. *Id.* He also stated that he sought to hire another attorney, and Attorney Shearn moved to withdraw as counsel. *Id.* Magistrate Judge Duffin ruled that he would grant Attorney Shearn's motion to withdraw after new counsel made an appearance, and he rescheduled El's arraignment and plea hearing for October 11, 2022. *Id.*

On October 11, 2022, Magistrate Judge Duffin attempted to hold the rescheduled arraignment and plea hearing, again by video conference. ECF No. 34. Attorney Shearn appeared on behalf of El, and Magistrate Judge Duffin noted that no new counsel had yet appeared. ECF No. 37 at 2–3. El requested to address the court directly and without counsel. *Id.* at 3. El stated that it was "against [his] best interest to hire an attorney who has an allegiance to the bar association as [he's] not a member." *Id.* El then stated that he wished to proceed pro se:

> THE COURT: . . . . The question is, are you waiving your right to counsel here today?
>
> DEFENDANT: Yes, I will be my own counsel.

*Id.* at 4. After El refused to answer any of Magistrate Judge Duffin's questions to "make sure [he] underst[ood] the consequences of representing [him]self," Magistrate Judge Duffin rescheduled the proceeding for an in-person hearing. *Id.* at 4–5. Magistrate Judge Duffin

explained that if El did not come voluntarily to Wisconsin for the in-person hearing, he would issue a warrant. *Id.* at 5. Magistrate Judge Duffin granted Attorney Shearn's motion to withdraw. *Id.* at 6.

On October 14, 2022, the proceeding reconvened in person as scheduled, and El was present. ECF No. 40. Magistrate Judge Duffin's first question to El was as follows:

> THE COURT: All right. Divine-Seven El, I notice you appear here today without counsel. Do you intend to waive your right to counsel and represent yourself in this matter?
>
> DEFENDANT: Yes.

*Id.* at 2. Magistrate Judge Duffin then held a *Faretta* colloquy with El. *Id.* at 2–7. Thereafter, El stated that he had no questions, *id.* at 5, that he did not believe that he had any "physical or mental illness, disease, disability or impairment that affects [his] ability to concentrate, understand and meet deadlines or communicate," *id.*, and decisively stated, "I will represent myself. I don't consent to the appointment [of counsel]," *id.* at 7. Based on these statements following the *Faretta* colloquy, Magistrate Judge Duffin found that El knowingly and voluntarily waived his right to counsel in this matter and permitted El to represent himself. *Id.* at 7.

The case then proceeded to pretrial motions before Magistrate Judge Joseph. On April 11, 2023, Magistrate Judge Joseph ordered the appointment of stand-by counsel for El. ECF No. 58. The day after stand-by counsel appeared for El, he moved to withdraw on the basis that El stated that "he did not want . . . standby counsel and asked that [stand-by counsel] immediately withdraw from his case." ECF No. 66. Magistrate Judge Joseph accordingly granted the motion to withdraw. April 21, 2023 text order.

Page 10 of 17

Case 2:22-cr-00169-JPS   Filed 12/19/23   Page 10 of 17   Document 197

After pretrial motions were resolved and the Court entered a trial scheduling order, on August 30, 2023, the Court referred El's case back to Magistrate Judge Joseph to ensure once again that El wished to proceed without the assistance of stand-by counsel. ECF No. 101.[2] Magistrate Judge Joseph conducted a colloquy with El, who objected to the appointment of stand-by counsel. ECF No. 103. At the final pretrial conference on October 3, 2023, this Court again cautioned El of the dangers of proceeding pro se. ECF No. 143 at 14 ("You know there is an old adage that those who seek to represent themselves have a fool for a client."). The Court explained the importance of understanding the sentencing guidelines and becoming familiar with the discovery and exhibits, which it noted have "been available to the defendants for an exceptionally long period of time," and with the Federal Rules of Evidence. *Id.* at 14–15, 21–22. The Court also ensured that El understood the risks of proceeding to trial. *Id.* at 14–15.

El now argues that Magistrate Judge Duffin's colloquy was insufficient, that Magistrate Judge Duffin failed to "make an inquiry about the conflict [El] was having with [Attorney Shearn] which [had] caused [El] to terminate her," and that he "was denied the option to substitute counsel," forcing him to choose between proceeding pro se or proceeding with Attorney Shearn. ECF No. 167 at 1; ECF No. 183 at 1. He further argues that the third, in-person arraignment and plea was scheduled with insufficient notice that left him unable to "consider [his] options" because he was under "threat of a warrant for [his] arrest." ECF No. 174 at 2. Finally, because

---

[2]The Court also referred Aziz Bey's case to Magistrate Judge Joseph for the same purpose, *id.*, and later did the same as to Ali's case, ECF No. 141.

"[t]he conflict with [his] counsel was never addressed," he also now requests "the full <u>certified</u> discovery" exchanged in this case. ECF No. 184.

To begin, at none of the three hearings in September and October 2022, or at any time thereafter, did El ask for substitution or appointment of counsel. Further, El never requested a continuance of the proceedings to hire new counsel. Instead, on multiple occasions both at the September and October 2022 hearings and at later proceedings, he stated that he was unwilling to hire any attorney who was a member of a bar association, objected to the appointment of counsel, and refused stand-by counsel. At the September and October 2022 hearings, El also unequivocally stated at least three times that he wanted to represent himself in this matter.

There is a fundamental difference in the inquiry a court is required to make depending on whether a criminal defendant moves for substitute counsel or moves to proceed pro se. *See United States v. Cross*, 962 F.3d 892, 897 (7th Cir. 2020); *see also United States v. Welty*, 674 F.2d 185, 191 (3d Cir. 1982) ("Although the nature of the representation the defendant is receiving from his counsel is relevant to a decision to proceed pro se, it is not necessary for the trial judge to explore the confidential relationship between the defendant and his attorney in order to make certain that the defendant knows the problems he faces in dispensing with legal representation entirely."). If a criminal defendant moves for substitute counsel, or for a continuance to hire new counsel, the court is required to inquire into the conflict between the defendant and his attorney. *Cross*, 962 F.3d at 898; *see also United States v. Zillges*, 978 F.2d 369, 371–72 (7th Cir. 1992). However, if there is "an unequivocal request" to proceed pro se, the court instead conducts a colloquy regarding the waiver of counsel under *Faretta*, 422 U.S. 806, and need not inquire into the alleged conflict between the defendant

and his attorney. *See Cross*, 962 F.3d at 898; *United States v. Todd*, 424 F.3d 525, 530 (7th Cir. 2005).

El's statements "were more than sufficient to raise the issue of self-representation," and Magistrate Judge Duffin reasonably understood El's statements as an unequivocal request to proceed pro se rather than a request to substitute counsel. *United States v. Mancillas*, 880 F.3d 297, 302 (7th Cir. 2018); *see also Oreye*, 263 F.3d at 670 ("[A] defendant can waive his right to counsel through conduct as well as words . . . . If you're given several options, and turn down all but one, you've selected the one you didn't turn down.") (collecting cases). Indeed, during his *Faretta* colloquy, Magistrate Judge Duffin advised El that he could have counsel appointed and asked whether the court should "appoint an attorney" for him, but El continued to state that he wished to represent himself. ECF No. 40 at 2–3, 7.

Magistrate Judge Duffin's *Faretta* colloquy was sufficient and appropriate.

> To determine whether a defendant's decision to proceed pro se was knowing and informed, we consider four factors: (1) whether and to what extent the district court conducted a formal hearing into the defendant's decision to represent himself; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to waive his right to counsel.

*Todd*, 424 F.3d at 530–31 (citing *United States v. Avery*, 208 F.3d 597, 601 (7th Cir. 2000)). With respect to the first factor, the Seventh Circuit has "rejected the notion that any checklist of warnings is mandated." *United States v. Powell*, 353 F. App'x 19, 22 (7th Cir. 2009) (citing *United States v. Hill*, 252 F.3d 919, 928 (7th Cir. 2001) and *Faretta*, 422 U.S. at 835). Instead, "[i]t is

enough . . . for the district court to 'ensure that the defendant knows his rights and avoids hasty decisions,'" which obligation is met where "the court alerts the defendant to the 'difficulties' of self-representation and highlights some of the complexities of trial procedure." *Id.* (quoting *Hill*, 252 F.2d at 928 and collecting cases).

Magistrate Judge Duffin advised El that if he chose to represent himself, he would "be responsible for all aspects of [his] case." ECF No. 40 at 3. He explained that "[f]ederal criminal law is complex and legal training and experience are highly desirable." *Id.* He noted that El would need to become familiar with the federal statutes under which he was charged, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, and the sentencing guidelines. *Id.* He explained how pro se representation would work if El chose to testify or if he was detained prior to trial, and how waiver of counsel affects his appellate rights. *Id.* at 4–5. Magistrate Judge Duffin also ensured that El was not suffering from any impairment that would affect his decision or ability to represent himself. *Id.* at 5.

This Court, too, repeated the same warnings at the final pretrial conference and noted the copious technical material with which El should become familiar, while observing that El has experience with the criminal justice system given his prior conviction. ECF No. 143 at 11, 14–15, 21–22; ECF No. 179-2; *see also Hill*, 252 F.3d at 928 (warning defendant of the "drawbacks of self-representation" may include additionally noting that he would have "a fool for a client"); *id.* ("Spelunkers, base jumpers, and investors likewise brave exposure to unexpected and unforeseeable events. [Defendant] was in the same position—and he knew it, having had some experience with the legal process while racking up prior convictions.").

Simply put, within the context of this case—where El appeared before three separate judges on multiple occasions to (1) confirm that he did not want counsel appointed or to hire a new attorney, (2) discuss the dangers of self-representation, and (3) ensure his waiver of counsel was knowing and intelligent—El's argument that he was under duress and forced to choose between Attorney Shearn and self-representation defies logic. *See Hill*, 252 F.3d at 929 ("A defendant bullied or frightened into acquiescing in a lawyer that he would rather do without would be in a much better position to say that the choice was not made knowingly or intelligently."). For these reasons, El's motions are denied. And as this Court noted at the final pretrial conference, El had all the discovery in this matter for a long period of time; thus, his renewed post-trial request for discovery on the basis that "[t]he conflict with [his] counsel was never addressed," ECF No. 184, is also denied.

However, given the filing of the instant motions, which again do not change the fact that El earlier "knowingly and intelligently waived his right to counsel," the Court will "inquire whether [El] wishes to revoke his earlier waiver" for purposes of sentencing. *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir. 1989) (citing *Schell v. United States*, 423 F.2d 101, 103 (7th Cir. 1970) and *Harig v. Wolff*, 413 F. Supp. 290, 296 (D. Neb. 1976)). Thus, should El file a statement on the docket that he wishes to revoke his earlier waiver of counsel for purposes of sentencing, the Court will refer his case to Magistrate Judge Joseph to address the issue. In the absence of any filing from El, however, his prior waiver shall stand for purposes of sentencing. *Id.* at 642–43.

## 4. CONCLUSION

Based on the foregoing analysis, the Court denies all of the pending motions for mistrial. ECF Nos. 154, 155, 156, 167, 174, 183, 184. The Court further notes, incorporating its prior holdings on the issue by reference, that the arguments raised in the affidavits of criminal complaint, ECF Nos. 171, 172, 173, are meritless.

Accordingly,

**IT IS ORDERED** that Defendant Minister Zakar Ali's motion for mistrial, ECF No. 154, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Aziz Hassan Bey's motion for mistrial, ECF No. 155, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Letez Osiris Bey's motion for mistrial, ECF No. 156, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Divine-Seven El's motion for retrial, ECF No. 167, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Divine-Seven El's updated motion for a new trial, ECF No. 174, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Divine-Seven El's motion to amend his motion for a new trial, ECF No. 183, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Divine-Seven El's motion for bill of particulars, ECF No. 184, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 19th day of December, 2023.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge